Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 09-1492

UNITED STATES OF AMERICA,

Appellee,

v.

RANNIK WILLIAMS DENT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,* and Howard, Circuit Judge.

Thomas S. Marjerison, with whom Norman, Hanson & Detroy, LLC
was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellee.

May 21, 2010

* The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  The defendant, Rannik Dent, was indicted along with one Jean Fournier for conspiracy to possess, and possession of, over fifty grams of cocaine base meaning to distribute it.  The evidence against him included a tennis-ball sized lump of crack found in a backpack he had left unattended at the house of Jaime and Thomas Bolduc in Lewiston, Maine.  Dent's motion to suppress the evidence as obtained in violation of the Fourth Amendment was denied on the ground that under the circumstances he had no reasonable expectation of privacy in the backpack.  We affirm.

Dent alternated living in New York City and Lewiston, where he stayed with the Bolducs' daughter Erica.  He also developed a romantic interest in another adult daughter, Meagan, who lived (at least periodically) down the street from Erica with her parents, two younger Bolduc children and Erica's young son. Dent frequented the Bolduc house and often looked after the younger children, whose photos in his possession showed his fondness for them.  Occasionally, he would spend the night there with Meagan, though Jaime ordered him not to do so, just as she instructed him not to use the address to receive mail.  Dent had not received permission to leave belongings at the house, and Jaime testified that she would have refused if he had asked for it.  Still, there was a degree of cordiality between Dent and the elder Bolducs, who

-2-

once paid his plane fare to New York, for which he reciprocated by giving Jaime a watch.

On the day in question, the police received a tip that Dent was distributing crack from Erica's residence. Then Fournier was arrested shortly after leaving the house and promptly informed on Dent, to the effect that Dent had hired him to deliver crack and remained in possession of more, which he kept in a plastic grocery bag that Fournier had seen him take to the Bolduc house. The police prepared to get a warrant to search for Dent's effects but then decided there was no time for that, since Fournier's failure to return from the delivery errand might alert Dent that something had gone wrong and lead him to jettison or hide any contraband. Two police teams set out to find him, one going to Erica's house and one to the Bolducs' place. After Dent was arrested at the former location, the police sought permission to search the latter. Once the Bolducs learned what the police were specifically after, Jamie Bolduc led them to Meagan's room. She handed them Dent's backpack and told them to look inside, where they found the shopping bag with a lump of crack. After the discovery, the Bolducs and Meagan signed written consent-to-search forms.

Dent argues that it was error for the district court to conclude that he could not reasonably expect to maintain privacy in a backpack left in the house while he was minding the younger children down the street. See United States v. Rheault, 561 F.3d

55, 58-59 (1st Cir. 2009) (expectation of privacy is a threshold inquiry to establishing a Fourth Amendment violation). We agree that if he had been in the house caring for the children with the Bolducs' obvious permission, it would indeed have been reasonable to expect them to respect his interest in keeping his personal effects to himself and to limit the police conduct accordingly; common notions of personal decency would have demanded no less. But he was not there when the police were allowed in (and it is not even clear that Jaime knew that he was looking after the children at Erica's house down the street).

Dent had instead left his pack behind in a house in which he had no property interest and no clearly defined social place. Although he had been helpful to the owners of the house and their family and had exchanged kindnesses with them, he had been forbidden to stay there overnight even at the invitation of the owners' daughter, had been told not to use the place even as a mail drop, and had no permission to leave his belongings there.[1] Without more, any expectation of support in maintaining privacy in his personal effects there would be described better as precarious than reasonable, see United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996). There is more, however, yet a further fact militating against Dent's claim of reasonable expectation. Jaime

---

[1] Dent argues that the district court's finding as to the lack of permission was clearly erroneous. This is not a serious claim.

Bolduc operated a large childcare center not far from the house, as anyone enjoying Dent's association with the family would reasonably have known and as Dent probably (to the degree of practical certainty) knew in fact. Any circumstance raising a suspicion of her complicity in criminal activity, or tolerance of it, could therefore have seriously damaged her. To have expected her to be anything but cooperative with the police would accordingly have been unrealistic, and to have expected her to subordinate her interests in order to deter the police from examining property Dent left behind at her house unattended would have been imprudent in the extreme. On the facts undisputed here, the reasonable expectation would have been that Jaime Bolduc would do what seemed best for herself and would accommodate the police, to show that she had no part in any questionable conduct by Dent and no sympathy for it.

There was no error in the district court's conclusion that Dent had no reasonable expectation of privacy in the backpack he had left behind, and the motion to suppress the evidence discovered in it was properly denied. Alternative arguments for admissibility of the crack need not be considered.

The judgment of the district court is **<u>affirmed</u>**.